472 P.2d 321

**Arletta Joyce ALBER, Plaintiff-Respondent,**

v.

**Richard James ALBER, Defendant-Appellant.**

**No. 10566.**

Supreme Court of Idaho.

July 22, 1970.

---

10. State v. Polson, 92 Idaho 615, 622, 448 P.2d 229, 236 (1968).

756

Isaac McDougall, Pocatello, for appellant.

Clark Gasser, Pocatello, for appellee.

SHEPARD, Justice.

This case presents for decision the paternity of a child born following the separation and divorce of the child's mother and her husband. The legal question appears to be unique in Idaho's jurisprudence and one which only seldom has been touched by courts of other jurisdictions.

The parties herein were twice married and finally separated during the month of November, 1966. The evidence shows without contradiction that plaintiff-respondent herein conceived a child between February 1 and February 10, 1967. The trial court, following a hearing, made extensive findings of fact which are extremely helpful in the disposition of this matter. Those findings are largely based on uncontroverted evidence and reveal essentially the following.

Following November, 1966, the parties lived in separate dwellings although in the same town. The respondent wife told several people between the months of March and June, 1967, that she was pregnant, that her husband was not the father of her child and she named another man as the father of the child. Those persons to whom she made the statements appeared and so testified at trial. The respondent wife wrote a letter to her then mother-in-law stating that she was pregnant and that a man other than her husband was the father of the child. The respondent wife had extramarital relations with a man not her husband between December, 1966, and March, 1967. In particular, said man spent the night of February 4, 1967, in the home of the respondent wife. On March 20, 1967, the respondent wife was advised by her gynecologist that she was pregnant. On March 31, 1967, the respondent wife, as plaintiff, filed a complaint for divorce praying for a decree of divorce and a division of the community property, and affirmatively alleging that no children were born of said marriage. On April 14, 1967, respondent wife visited her gynecologist and was told that her pregnancy was progressing normally. On May 2, 1967, a default judgment of divorce was taken by the respondent wife against the appellant herein. In her examination under oath in support of the allegations of her verified complaint, respondent testified that she had no children as a result of the marriage. On that date judgment was entered against the defendant husband granting the plaintiff a divorce, dividing the community property, and ordering the defendant to pay certain community obligations, attorney's fees and costs. A child was born to respondent on October 26, 1967. On April 4, 1968, respondent filed her motion for modification and amendment of the original divorce decree asking that there be included therein a provision for child support of $50.00 per month and for payment of her attorney fees.

Appellant herein moved to strike the motion to modify the divorce decree, which motion was denied.

Thereafter a hearing was held on respondent's motion to amend and modify the original divorce decree and, as above indicated, extensive evidence was adduced. In addition to the evidence set forth above, the respondent mother testified that during the month of February she and her then husband had cohabited for a period of four days in her home. Such testimony was hotly controverted by the appellant and other witnesses. The respondent mother also testified that she did not believe her

gynecologist because she had had numerous false pregnancies and miscarriages at earlier times. The trial court made no finding regarding that testimony by the respondent mother. Following the hearing and the trial court's entry of findings of fact, conclusions of law, memorandum decision and order, counsel for the respondent mother objected to and moved to amend the trial court's findings of fact and conclusions of law. Among other things, additional findings of fact were requested to the effect that the parties hereto had lived and resided together between December, 1966, and March, 1967, and that the respondent mother did in fact disbelieve her gynecologist. The trial court denied plaintiff's objections to the findings of fact and conclusions of law and refused the amendments thereto sought by respondent's counsel.

Thereafter the trial court entered its memorandum decision and order, stating:

"From the evidence submitted, it would appear that the child, the subject matter of this hearing, was conceived during the marriage of the parties and that no matter what opportunity others may have had still if the child was conceived during the marriage, *the law appears to be that the husband cannot disclaim paternity.*" (Emphasis supplied)

The court therefore ordered the original decree of divorce to be modified and amended to provide support money for said child and the payment of the respondent's attorney fees both at trial and on appeal.

It is implicit in the trial court's findings, conclusions, orders and decrees that the court apprehended the law to be that a child conceived during marriage is conclusively presumed to be the child of the husband. The appellant herein disagrees with the memorandum decision, order and decree of the trial court and appeals here.

Numerous errors are assigned but in essence there are only two. First, appellant contends that the trial court erred in assuming jurisdiction over him and that his motion to strike should have been granted.

Secondly, appellant contends that the presumption, if any there be applicable to the paternity of the child, is not conclusive, but can be controverted. Appellant argues that the evidence adduced and set forth by the trial court in its findings more than rebutted the presumption that he as former husband was the father of the child.

Appellant points out that this cause was initiated by the respondent wife in the filing of her complaint and that he, the appellant, did not answer. He points out that the prayer of the complaint did not request any child support and indeed the complaint affirmatively alleged that there were no children of the marriage.

I.C. § 10–704 provides:

*"The relief granted to the plaintiff, if there be no answer, can not exceed that which he shall have demanded in his complaint;* but in any other case the court may grant him any relief consistent with the case made by the complaint embraced within the issue." (Emphasis supplied)

This Court has consistently followed the dictates of I.C. § 10–704. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351 (1951); Cobb v. Cobb, 71 Idaho 388, 233 P.2d 423 (1951); Anderson v. Cummings, 81 Idaho 327, 340 P.2d 1111 (1959).

On the other hand, I.C. § 32–705 provides:

"In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

This section has been continuously construed by our courts as a retention of jurisdiction to modify the decree of divorce when and if the well-being of the children of the marriage so demands. Maudlin v. Maudlin, 68 Idaho 64, 188 P.2d 323 (1948); Tobler v. Tobler, 78 Idaho 218, 299 P.2d 490 (1956).

Appellant argues, however, that the respondent wife in this cause was fully aware

of her pregnancy at the time of the filing of her complaint and also at the time of her sworn testimony at the default hearing. He further argues that having the knowledge of the pregnancy and willfully concealing said fact from the trial court, she is thereby estopped to now move for modification of said judgment.

While we recognize the multitude of authority cited by appellant illustrating the doctrines of estoppel by judgment and res judicata and the necessity for timely request for modification within the statutory period, we hold that they do not apply to a case of this nature where the specific issue drawn in question is that of child support. Child support is for the benefit of the children. Kirkwood v. Kirkwood, 83 Idaho 444, 363 P.2d 1016 (1961). Although a mother may benefit indirectly from child support payments, she is not the real person in interest who can waive the rights of the child.

Although we do not agree with the ultimate decision, the case of Moore v. Moore, 231 Or. 302, 372 P.2d 981, 983 (1962), had the following to say regarding a jurisdictional question identical to the case at bar:

"If, in the initial divorce proceeding, plaintiff's pregnancy had been disclosed to the court it would have been within the power of the court to determine that defendant was the father of the expectant child and to include in the decree an order directing defendant to pay support money for that child (citations omitted). From the standpoint of the court's jurisdiction the case is no different where the wife's pregnancy during the proceeding is not disclosed until after the decree. The court's jurisdiction continues after the decree, not only to modify the decree so as to require the payment of support money for the omitted child, but also to determine the question of paternity (citations omitted). The fact that plaintiff purposely concealed her pregnancy from the court cannot militate against the child's right to be supported by its father. In these proceedings the criterion for

judgment is the child's welfare and not the fault of the parent."

See also Hutschenreuter v. Hutschenreuter, 23 Wis.2d 318, 127 N.W.2d 47 (1964); Mund v. Mund, 252 Minn. 442, 90 N.W.2d 309 (1958); and Thompson v. Thompson, 347 P.2d 799 (Okla.1959).

We hold therefore that the trial court herein had continuing jurisdiction over the parties for the determination of the questions presented to it. The conduct and the misrepresentations of a parent cannot militate against the interest of a child which is of paramount consideration.

We then arrive at the more difficult question presented in this case, to-wit: the paternity of the child. The common law has always presumed that a child conceived during wedlock is the legitimate offspring of his legal parents. H. Clark, The Law of Domestic Relations, § 5.1, p. 155 (1968). The effect of such presumption varies from state to state and from factual situation to factual situation. See, e. g. Oregon Revised Statutes 109.070 and West's Ann. Calif.Civ.Code § 230. In Idaho, however, such a presumption did not have legislative attention until the enactment of Ch. 93 of the Idaho Session Laws of 1969, entitled "Proceedings to Establish Paternity." Such legislative enactment deals primarily with the determination of paternity of illegitimate children and its emphasis is upon the utilization of blood tests to insofar as possible determine the paternity of such children. That portion of the legislative enactment, now codified as I.C. § 7–1119, states only:

"The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts [previously referred to as experts on the matter of blood tests], as disclosed by the evidence based upon the tests [blood tests], show that the husband is not the father of the child."

Such legislative enactment sheds no light on the problems at issue herein because of the date of its passage and the lack of any evidence of utilization of blood tests. In

any event, it is clear from the present development of forensic medicine that blood tests are at best an exclusionary device and determinative of non-paternity in only approximately 50 per cent of the cases. See Schatkin, Disputed Paternity Proceedings, p. 131 (4th Ed. 1967); H. Clark, Law of Domestic Relations, § 5.3, p. 169 (1968). The only cases in Idaho discussing any presumption of paternity do not involve any such questions as are presented herein, but discuss only the legitimacy of the marriage. Thomey v. Thomey, 67 Idaho 393, 181 P.2d 777 (1947); Mauldin v. Sunshine Mining Co., 61 Idaho 9, 97 P.2d 608 (1939).

We are called upon for the first time to determine the effect of the presumption of legitimacy of a child conceived during wedlock. While there is authority for the well-nigh conclusive effect of such a presumption, the more modern doctrine is that the presumption of legitimacy of a child conceived in wedlock may be rebutted by proper and sufficient evidence. 10 C.J.S. Bastards § 3, pp. 21–22.

In the early common law it was a rule of substantive law rather than a presumption that "he is the father whom the marriage indicates" and "every child conceived in wedlock is legitimate." 7 A.L.R. 330. That conclusion was not to be questioned. Unusual and ridiculous results obtained as during the reign of Edward II, when the Countess of Gloucester gave birth to a child one year and seven months after the death of her husband and the child was pronounced legitimate as the child of the dead husband. In time certain exceptions came to be recognized. The rule could be controverted if the husband was beyond the four seas of England or if the husband could be proved impotent. Later it came to be held that legitimacy could be controverted by proof of impotency or lack of access. Pendrell v. Pendrell, 2 Strange 925, 93 English Reports 945 (1732). In 1951 it was made clear that the presumption controlled absent proof of illegitimacy *beyond a reasonable doubt*. Preston-Jones v. Preston-Jones, [1951] A.C. 391.

The cases in the United States appear to indicate that the trend has been away from the rule of the conclusive presumption and that countervailing evidence may shatter the presumption where "common sense and reason are outraged by a holding that it abides." There appears to be, however, no generalized rule regarding what type of evidence may shatter the presumption since even within the same jurisdictions there are variations and seeming confusion as to what is admissible. In some jurisdictions evidence of nonaccess, impotency, sterility, miscegenation, absence and abnormal periods of gestation have been admitted to successfully rebut the presumption. 35 So. Cal.L.Rev. 437; 112 U.Pa.L.Rev. 613; 33 Harv.L.Rev. 306.

Perhaps the most widely cited case in recent years on the presumption of legitimacy of a child born or conceived during marriage is the opinion of Justice Cardozo, who was then Chief Justice of the Court of Appeals of New York, in In re Findlay, 253 N.Y. 1, 170 N.E. 471 (1930). Although the facts are substantially different than the case at bar the language contained therein is much more appealing from the standpoint of logic and reason than earlier and archaic pronouncements. Mr. Justice Cardozo said:

"Potent, indeed, the presumption [of legitimacy] is one of the strongest and most persuasive known to the law (citations omitted), and yet subject to the sway of reason. Time was, the books tell us, when its rank was even higher. If a husband, not physically incapable, was within the four seas of England during the period of gestation, the court would not listen to evidence casting doubt on his paternity. The presumption in such circumstances was said to be conclusive. (citations omitted). The rule of the four seas was exploded by the judgment in Pendrell v. Pendrell, 2 Strange 925, decided in 1732. It was exploded, as Grose, J., observed in a later case (citations omitted) 'on account of its absolute nonsense.' Since then the presumption of legitimacy, like other presump-

tions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of the cogency of the evidence sufficient to repel it.

" * * * By and large, none the less the courts are generally agreed that countervailing evidence may shatter the presumption though the possibility of access is not susceptible of exclusion to the point of utter demonstration. Issue will not be bastardized as the outcome of a choice between nicely balanced probabilities. (citation omitted) They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty. Some of the books tell us that, to overcome the presumption, the evidence of nonaccess must be 'clear and convincing' (citations omitted); others that it must lead to a conclusion that is 'strong and irresistible' (citations omitted); others that it must be proof 'beyond all reasonable doubt' (citations omitted).

"What is meant by these pronouncements, however differently phrased, is this, and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides. If husband and wife are living together in the conjugal relation, legitimacy will be presumed, though the wife has harbored an adulterer. (citations omitted) It may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together. *Whether such a basis exists in any given instance is to be determined, however, in the light of experience and reason.* The presumption does not consecrate as truth the extravagantly improbable, which may be one, for ends juridical, with the indubitably false. (citation omitted) [Emphasis supplied]

* * * * * *

" 'When all the ends which the presumption of legitimacy is designed to conserve have been defeated by sordid facts, the courts must deal with the situation in a common sense way.'

* * * * * *

"Viewing the evidence before us in all its cumulative significance, we. think it points with overwhelming force to one conclusion and one only. We have no thought to weaken the presumption of legitimacy by allowing its overthrow at the call of rumor or suspicion, or through inferences nicely poised. What we are now holding is in line with the historical development which has shorn the presumption of some of its follies and vagaries. Follies and vagaries· by concession· there have been. * * * Extravagances hardly less violent there have been at other times in insisting upon the negation of every shadowy possibility. These and nothing more we are pruning from the law."

As suggested by Mr. Justice Cardozo and as pointed out by the concurrence in Wareham v. Wareham, 195 Cal.App.2d 64, 15 Cal.Rptr. 465 (1961), the blind application of the presumption to the exclusion of reason can only result in obvious perversions of justice. In that case the presumption of legitimacy was applied in the face of blood tests proving conclusively that the husband could not have been the father of the child.

It remains to comment on the case principally relied on by respondent herein, that of Moore v. Moore, supra. Although that decision dealt with the paternity of a child conceived during a first marriage and born following a divorce and a second marriage, we suggest that the same is not at point herein. In *Moore* the child was born in May, 1961, and the mother and her first husband had admittedly cohabited and engaged in sexual intercourse until November 10, 1960. In the case at bar there is no question that the child was conceived following the separation of the parties hereto and the only question is whether the appellant had access to the mother during the time of conception between February 1 and February 10.

We hold that where, as here, a child is admittedly conceived during the

period of a marriage although born following the dissolution of the marriage, a presumption arises that the then husband is the father of the child. We further hold that such a presumption is not conclusive but may be rebutted by clear and convincing evidence. State v. Mejia, 97 Ariz. 215, 399 P.2d 116 (1965). We further hold that either the husband or wife may testify as to nonaccess during the period of conception. In the case at bar the trial court found, on the basis of sustaining evidence, that the parties separated in November, 1966. The trial court likewise found that the child was conceived between the dates of February 1 and February 10, 1967. The trial court found on the basis of somewhat controverted evidence that the mother carried on an adulterous relationship with a man other than her husband between December, 1966 and March, 1967, and that the same man spent the night with her at her dwelling on February 4, 1967.

The mother testified that the husband cohabited with her for a period of four days during the time of the conception of the child. A finding to such effect was requested but specifically refused by the trial court.

As a court of appellate review, we are unable to say whether the appellant herein established by clear and convincing evidence his nonaccess during the time of the conception of the child. Such evidence was in controversy and only the trial court had the opportunity to hear the witnesses and observe their demeanor and assign credibility or lack thereof to their testimony. From our review of the respondent's proposed amended findings of fact and the trial court's refusal to enter such, we are tempted to speculate that the trial court did not believe the respondent wife's testimony. This, however, would be improper and an invasion of the province of the trial court.

It therefore follows that the order of the trial court amending and modifying the original decree of divorce and ordering the appellant herein to pay child support is reversed and remanded with the following instructions.

The trial court is ordered to make a specific finding of fact based on the evidence heretofore adduced regarding whether the appellant had access for the purpose of sexual intercourse with his then wife following their separation in November, 1966, and during the possible period of conception. Following the entry of such finding of fact, the trial court is further instructed to enter his conclusion of law stating whether or not the presumption of the legitimacy of the child conceived during the marital period has been overcome by clear and convincing evidence. In the event that the trial court finds that the presumption of legitimacy has not been overcome by clear and convincing evidence and adheres to the conclusion that the appellant herein is the father of the child in question, then the trial court is directed, on the basis of the present record or further evidence if necessary, to enter his findings of fact and conclusions of law regarding the fitness of the respective parties to be awarded the care, custody and control of the minor child. Thereafter the trial court shall make his conclusions of law and his order awarding the care, custody and control to one or the other of the respective parties. In the event custody be awarded to the respondent, the trial court is further directed to award child support. No costs are awarded and no attorney's fees are awarded on appeal. The question of attorney's fees heretofore awarded by the trial court is hereby reserved and that question is remanded to the trial court for final determination following the trial court's decision on remand as hereinabove set forth.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.