OPINION OF THE COURT
Joseph L. Torres, J.
By motion dated September 30, 1989, the putative father *1002 seeks to vacate an order of filiation entered by this court on consent on December 14, 1987. The mother has cross-moved to dismiss the father’s petition claiming that, under the facts and circumstances present here, the father is estopped from relitigating the issue of paternity.
The Law Guardian, appointed to represent the child, recommends that the parties and the child be ordered to submit to a composite human leucocyte antigen (HLA) blood test or a new deoxyribonucleic acid (DNA) genetic test and the matter tried.
Based upon the parties’ and the Law Guardian’s motion papers and upon all the prior proceedings herein, the parties’ separate motions are resolved as follows.
The parties were married in Queens County, New York, in 1972 and divorced (pursuant to a legal separation) in the same county in 1978. There is no issue of that marriage.
In July 1980, the parties began "dating” and the mother became pregnant. The father moved in and began living with the mother in February 1981. The child, Christopher, was born in May 1981. The father ultimately moved out of the mother’s home in October 1983 and voluntarily began paying the mother $62.50 per week as support for the child.
The mother filed a paternity petition with this court and an order of filiation was entered on December 14, 1987 upon the father’s admission of paternity. Before his admission was accepted, the court apprised the father of: (1) his right to counsel and the free assignment of counsel if he could not afford legal representation; (2) his right to two blood tests including a composite HLA blood-grouping test which would be provided free of cost to him if he could not afford the test; and (3) his right to remain silent on the issue of paternity.
Subsequently, on December 14, 1987, an order of support was entered by a Hearing Examiner which required the father to pay $170 biweekly for the support of the child. On January 12, 1988, the father filed specific written objections to the Hearing Examiner’s order. The father never raised the issue of paternity in his written objections, but wrote therein "I was under the impression that I was going to court to state I was the father of Christopher. I had no objection to stating that, since he is my son”.
On May 24, 1989, the father filed a petition for downward modification of support on the grounds that his monthly rent had increased. He failed to raise the issue of paternity in that matter.
*1003 For reasons not disclosed on the record, the mother agreed to submit herself and the child to a privately arranged DNA genetic test. Blood samples were drawn from the mother, father and child by an independent laboratory in Manhattan on September 9, 1988. The laboratory immediately gave the blood samples to the father in order for him to transport them by car to the Lifecodes Corporation in Valhalla, New York. The father’s transportation of the blood samples from the laboratory in Manhattan to the Lifecodes Corporation took place without any supervision. In his supporting papers, the father swears that he transported the blood samples, in his own car, neither tampering with the samples nor contaminating them. Lifecodes Corporation reported on October 19, 1988 that the DNA testing of the samples revealed that the child was not the father’s issue.
The child knows no one but this father as his father.
Two questions are presented here: (1) what effect, if any, shall be given to the privately arranged DNA test of September 19, 1988; and (2) assuming that no effect can be given that test, is the ordering of new HLA or DNA tests of the child and the parties required? For the reasons set out below, this court gives no effect to the privately arranged DNA test and finds that there is no need for new tests to be ordered.
New York law does not prohibit the admission of DNA testing into evidence in civil matters simply because the testing was not conducted under court order. (See, CPLR 4518; Matter of Oliver v England, 48 Misc 2d 335; Lory v Lory, 119 Misc 2d 205; Matter of Moore v Murray, 63 Misc 2d 401.) The results of such privately arranged testing may be admitted into evidence upon consent of both parties or upon a notice or motion to admit (CPLR 3123) or, at trial, if it meets evidentiary criteria. (Richardson, Evidence § 4, at 2 [Prince 10th ed].)
In matters of paternity, Family Court Act § 532 empowers this court to order composite HLA or DNA testing of the child and the purported parents at the request of either party or in its judicial discretion. The court may allocate the cost of such testing among the parties. (Family Ct Act § 532 [c].) The results of such testing may be received into evidence at trial. (CPLR 4518; Family Ct Act § 532.)
HLA testing has undergone considerable litigation. (See, e.g., Matter of Sandra C. v Thomas J.S., 100 AD2d 119 [1984]; Matter of Linda K.L. v Roberts, 109 Misc 2d 628 [1981].) While the results of such court-ordered testing are not conclusive *1004 evidence of paternity, it is clear in the case of HLA testing that the results must be accorded great weight. (Matter of Bowling v Coney, 91 AD2d 1195 [1983]; Matter of Nassar v Lake, 124 Misc 2d 248 [1984].) Indeed, it has been the experience of this court, that as a practical matter, the results of the court-ordered HLA testing are virtually determinative of the paternity issue in most cases.
DNA testing stands on somewhat different footing. DNA genetic testing theory is generally accepted as reliable by the scientific community. But laboratory procedure and lack of uniform criteria connected with DNA testing — including the manner in which the samples are obtained — have made suspect the validity of the results to the point where the results of such testing have been excluded as evidence as a matter of law. (People v Castro, NYLJ, Aug. 16, 1989, at 19, col 3.)
New York courts may exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice, undue delay or waste of time. (People v Harris, 209 NY 70; Radosh v Shipstad, 20 NY2d 504; Richardson, Evidence § 147, at 117 [Prince 10th ed].)
In the case presently before the court, the transportation of the blood samples by the father — a party here with obvious personal and economic interests at stake — without the supervision and control by either the Manhattan laboratory or Lifecodes Corporation has tainted irreparably the parties’ privately arranged DNA test results. The admission and the weight to be accorded this DNA result will turn almost exclusively upon the assessment at trial of the father’s credibility. His testimony is so inherently suspect and so patently conducive to perjury as to make the proffered DNA results worthless as evidence. More importantly, the child, who has most to lose by the admission of this evidence, could not consent or waive his right to consent to this privately arranged testing due to his infancy.
Accordingly, the court exercises its discretion and finds that the results here of the parties’ privately arranged DNA test to be of such little probative value and so outweighed by the danger of prejudice, of undue delay and of waste of time that it must be rejected totally as evidence.
Having determined that no effect shall be given to the parties’ privately arranged DNA test, the court refuses to order a new DNA or HLA test or set the matter down for trial on the grounds of equitable estoppel. Equitable estoppel arises when a person’s acts, representation or silence — intentional or *1005 through culpable negligence — lead another to believe in the existence of some material fact and to rely upon that fact to his or her detriment. The doctrine of equitable estoppel is applicable in a paternity proceeding (Matter of Ettore I. v Angela D., 127 AD2d 6 [1987]; Matter of Sharon G.G. v Duane H.H., 95 AD2d 466 [3d Dept 1983]).
In the case before the court, the father freely assumed the status of father to this child since the child’s birth. The child was born during a period of time that the parties were living together as a family. It was not necessary for the father to confess paternity in a Family Court proceeding but he did. For nearly a decade and for the child’s entire life, the father was accorded and, indeed, has enjoyed the recognition of being the child’s father with all the rights appurtenant thereto. He freely supported the child and freely exercised his reciprocal and untrammeled rights to custody and visitation. The father has been active in the child’s life and there exists a father-child relationship. To permit the father’s claim would risk stigmatizing this child as illegitimate and would serve only to reward the father for the poor judgment of the mother at the sole expense of the child.
Also pertinent here are the constitutionally protected rights of this child. Had Christopher been born shortly before or during the period that the parties were married, the father— on the basis of the tainted evidence offered here — would have been estopped from raising the issue of the child’s paternity in the face of the presumption of legitimacy. (See, Matter of Time v Time, 59 Misc 2d 912 [Fam Ct, NY County 1969]; Hill v Hill, 20 AD2d 923.) To treat this child at this time differently from those children protected by the presumption would serve to discriminate against Christopher unconstitutionally on the sole basis of his illegitimacy. (See, Caban v Mohammed, 441 US 380 [1979]; Quilloin v Walcott, 434 US 246 [1978]; Stanley v Illinois, 405 US 645 [1972].)
This father is the only father that this child has ever known. This father is estopped from saying that he is not.
All other arguments by the parties and the Law Guardian have been considered by the court and are found to be without merit.
Accordingly, the mother’s application to dismiss on the merits is granted. The father’s motion to vacate the order of filiation of December 14, 1987 is denied.