**Julia SMITH, Appellant,**

v.

**Ronald SMITH, Appellee.**

No. S–4874.'

Supreme Court of Alaska.

Feb. 5, 1993.

takes on burden of foreclosing on the debt should the mortgagor default).

Joseph R. Faith, Alaska Legal Services, Bethel, and Michael Gershel and Carol Daniel, Alaska Legal Services, Anchorage, for appellant.

Christopher R. Cooke, Hedland, Fleischer, Friedman, Brennan & Cooke, Bethel, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

Julia Smith [1] appeals the superior court's divorce decree finding that Ronald Smith was not the father of Jeffrey Smith, a child born during Julia and Ronald's marriage. Because the superior court failed to explicitly find that Ronald had rebutted the presumption of paternity by clear and convincing evidence, we vacate that portion of the divorce decree declaring Ronald not to be Jeffrey's father. The case is remanded for more specific findings.

## I. *FACTS AND PROCEEDINGS*

Ronald and Julia Smith were married on July 8, 1973. Julia gave birth to her first child, Aaron, in April 1974. The parties agree that Ronald is not Aaron's father. Julia's second son, Jeffrey, was born on June 24, 1977.

In April 1989 Ronald commenced a divorce action in which he alleged that he was not Jeffrey's father. Trial on the paternity issue commenced in October 1990. Ronald testified that he did not have sex

---

1. In the interest of privacy, fictitious names are used in this opinion.

with Julia after October 1975. He testified that he and Julia separated in the fall of 1975 and that he worked in Akiak throughout 1976. Ronald produced his 1976 W-2 form showing his employer as "Akiak B.I.A. Housing." Ronald also produced his 1977, 1979, and 1980 Bureau of Indian Affairs employment records which stated that Ronald worked in Akiak from October 1975 through December 1976.

Julia testified that Ronald lived with her in Napakiak in the summer and fall of 1976 and that she had sexual relations only with Ronald during the probable time of conception. Julia's niece also testified that Ronald lived with Julia in Napakiak in the summer of 1976, and was still there when she left in August.

Julia introduced account records from the Napakiak Trading Post which indicated that Ronald made payments on the account on July 28, 1976 and September 29, 1976. However, the records also show that the store changed Ronald's mailing address from Napakiak to Akiak in April 1976.

Julia qualified Dr. James Geyer as an expert in paternity blood testing. Dr. Geyer testified that his tests showed a 99.59% probability that Ronald was Jeffrey's father.

In September 1991 the superior court issued a final divorce decree, along with findings of fact and conclusions of law. The superior court's findings, which were a verbatim adoption of findings submitted by Ronald, stated in part:

> The parties have lived separate and apart since the fall of 1975.
>
> . . . .
>
> The Court finds that the plaintiff is *not* the father of JEFFREY [SMITH] and, therefore, the plaintiff has *no right of* custody or visitation and no duty to support this child.

This appeal followed.

## II. *DISCUSSION*

■ The longstanding common law rule is that a child born to a married woman is presumed to be the offspring of her husband. *See, e.g., Lanford v. Lanford,* 151 Colo. 211, 377 P.2d 115, 116 (1962) (en banc) (presumption dates back to Roman Law); *Alber v. Alber,* 93 Idaho 755, 472 P.2d 321, 324 (1970). This presumption of a husband's paternity can be rebutted only by "clear and convincing evidence." *Lanford,* 377 P.2d at 117; *Alber,* 472 P.2d at 327; Uniform Parentage Act § 4(b), 9B U.L.A. 299 (1987). We adopt both the presumption and the concomitant standard of proof for rebutting it.

■ Our legislature has created a similar presumption regarding paternity blood tests. Alaska Statute 25.20.050(d) provides, in part:

> The results of a blood test ... shall be admitted and weighed in conjunction with other evidence in determining the statistical probability that the putative parent is a legal parent of the child in question. However, a scientifically accepted procedure that establishes a probability of parentage at 95 percent or higher creates a presumption of parentage that may be rebutted only by clear and convincing evidence.

Since Dr. Geyer's tests indicated a 99.59% likelihood that Ronald was Jeffrey's father, the presumption in AS 25.20.050(d) applies to this case.[2]

■ The superior court's finding that "the plaintiff is *not* the father of JEFFREY [SMITH]" makes no mention of the standard of proof it used. The court's failure to indicate the standard of proof it used requires us to remand the case. *See Curran v. Mount,* 657 P.2d 389, 392 (Alaska 1982); *Kupka v. Morey,* 541 P.2d 740, 750 (Alaska 1975). On remand, the superior court should explicitly determine whether Ronald has overcome the statutory and common law presumptions of paternity by

**2.** We are not persuaded by Ronald's attempts to undermine the results of Dr. Geyer's tests.

clear and convincing evidence.[3]

That portion of the superior court's divorce decree declaring Ronald not to be Jeffrey's father is VACATED and the case is REMANDED for further proceedings in accordance with this opinion.

---

**3.** If, on remand, the parties submit proposed findings of fact and conclusions of law, we caution the superior court to carefully consider their content before adopting them. Verbatim adoption of findings and conclusions prepared by counsel is appropriate only when the findings and conclusions "reflect the court's independent view of the weight of the evidence." *Industrial Indem. Co. v. Wick Constr. Co.*, 680 P.2d 1100, 1108 (Alaska 1984).