In the Matter of J.B., a Minor Under the Age of Eighteen (18) Years. DOB: 01/07/92.

M.B., Appellant,

v.

STATE of Alaska, Appellee.

No. S–6388.

Supreme Court of Alaska.

Aug. 9, 1996.

Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellant.

Dianne Olsen, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MATTHEWS, Justice.

Challenged in this case is an order determining that Mark Bridge,[1] the presumptive father of Johnny Bridge, is not the biological father of Johnny.

Mark and Melody Bridge were married in December of 1990. They separated a year later. Johnny was born on January 7, 1992. Melody and Mark were divorced in December of 1993.

In May of 1992, the State initiated an investigation based on a number of complaints regarding the care which Johnny was receiving from Melody and Melody's boyfriend, Kyle Restin, Sr. On August 4, 1992, the State filed a non-emergency petition seeking the adjudication of Johnny as a child in need of aid. In October of 1992 the court appointed counsel for Mark, who was then living in Oregon. In January of 1993, Melody gave birth to a child fathered by Kyle Restin; Kyle, Jr. On March 4, 1993, the State filed an amended petition for adjudication of Johnny and Kyle, Jr., as children in need of aid. The amended petition states that the State took emergency custody of Johnny and Kyle, Jr., on March 3, 1993.

On August 2, 1993, Melody relinquished her parental rights to Johnny and Kyle, Jr., and Kyle, Sr., relinquished his parental rights to Kyle, Jr. Mark, on the same day, signed a stipulation that Johnny was a child in need of aid "for the reason that [Mark Bridge] is unable to care for [Johnny Bridge] for the reason he is living out-of-state and the suitability of placement with him is still being investigated through the Interstate Compact for the Placement of Children." The stipulation further provided that Johnny would remain in the temporary custody of the Department of Health and Social Services "until disposition in this matter." Pursuant to this stipulation the superior court entered an order adjudicating Johnny to be a child in need of aid, set a disposition hearing and dates for reports from the State and Johnny's guardian ad litem.

In September of 1993, Mark came to Anchorage to visit his son; he decided to stay in order to strengthen his relationship with Johnny. A court-ordered report authored by a state social worker raised the possibility that Mark might not be the biological parent of Johnny, and recommended that the court require paternity testing. The court, at a disposition hearing held November 1, 1993, ordered testing to determine whether Mark is Johnny's biological father. In the same order the court committed Johnny to the custody of the State "for a period of time not to exceed two years," noting that "[r]easonable efforts are being made to provide remedial services to return the child to the parental home" and that "[p]lacement in the parental home would be contrary to the welfare of the child at this time."

The testing was performed, and on February 1, 1994, the State received a copy of a letter from a physician with the Memorial Blood Center of Minneapolis which concluded that "it is possible to establish that [Mark Bridge] cannot be the biological father of [Johnny Bridge]." Based upon this letter, the State terminated Mark's visitation with Johnny.

---

1. All names of parties used in this opinion are pseudonyms.

Mark filed a motion "to review disposition and case plan" which sought the continuation of Mark's visitation with Johnny and challenged the standing of the State to deny Mark's paternity. Mark sought oral argument and "an appropriate hearing" on an expedited basis in connection with this motion.

The State filed a combined pleading which was both an opposition to the motion for review of the disposition order and case plan and a motion "for finding that [Mark Bridge] is not the father of [Johnny Bridge]." This pleading was supported by an affidavit of Philip Kaufman, the state social worker on the case, to which was attached the letter from the director of the Memorial Blood Center of Minneapolis and blood test results excluding Mark as a biological parent of Johnny.

The guardian ad litem filed an opposition to Mark's motion to review the disposition order. In addition, the guardian filed a pleading supporting the State's motion for a finding that Mark is not the father of Johnny: "It is in the minor's best interest for the court to enter such finding."

Mark filed a timely opposition to the State's motion. In the opposition Mark again challenged the authority of the State to deny his parenthood of Johnny. He did not, however, question the test results or ask for further proceedings to determine the question of his biological paternity.[2] The court denied Mark's motion for review of the disposition order and case plan and granted the State's motion for a finding that Mark is not the father of Johnny. The order concluded that "[Mark] is no longer entitled to party status in this matter." The court added:

"The court finds proof which rebuts the presumption of paternity, i.e. blood tests. Evidence does not support [Bridge's] claim on either factual or legal grounds that he should be denominated as a 'psychological parent' or claim any other equitable rights to the child."

From this order Mark appeals. On appeal he makes two claims. First, he argues that the State does not have the authority to challenge the presumption of paternity. Second, he argues that his due process rights were violated because there was no hearing and the evidence relied on was not properly admitted as evidence. In our view, neither point has merit.

 Johnny has been appropriately adjudicated as a child in need of aid. Mark stipulated to this adjudication. Further action in the case contemplated a range of possibilities, extending from adoption of Johnny by his foster family to relinquishment of custody of Johnny to Mark. For each of these possibilities a threshold determination of Mark's paternity of Johnny was an important consideration. The superior court, as the trial court of general jurisdiction in the state, AS 22.10.020(a), had jurisdiction to make this determination.[3] Given the critical importance of the question of paternity, the State, as custodian of the child, has the authority to seek a determination of paternity when substantial questions concerning parentage are raised. See J.W.F. v. Schoolcraft, 763 P.2d 1217, 1221 (Utah App.1988), rev'd on other grounds, 799 P.2d 710 (Utah 1990) (guardian ad litem "had a responsibility as well as a right to raise the issue of [the presumptive father's] paternity" and a juvenile court in a "neglected child" proceeding had jurisdiction to decide the question of

2. He did, however, request a hearing concerning various legal theories:

A hearing is required to determine which legal standard the court should first apply to reach a just and fair result in this matter; shouldn't this court still consider Mr. [Bridge] a parent, based on the presumption of the legitimacy of children born in to a marriage? Even if not, serious questions of fact exist as to the Best Interests of [Johnny] as [Mark Bridge] retains legitimate residual parental rights, such, for example, the right to have his son retain the [Bridge] name or the right of a presumptive father to claim a child born of a

legitimate marriage as his son, as there is no other parent asserting a contrary or superior right to this child.

3. For example, under the child in need of aid statute, the court is authorized to find a child in need of aid based on parental conduct, and to terminate parental rights based on parental conduct. AS 47.10.010(a)(2); AS 47.10.080(c)(3). A threshold question in such cases may be whether a person claiming the rights of a parent is a parent. Under Rule 2(l) of the Child in Need of Aid Rules, "parent" means a biological or adoptive parent.

paternity). In *In re Lisa R.*, 13 Cal.3d 636, 119 Cal.Rptr. 475, 479–80, 532 P.2d 123, 127–28 , *cert. denied*, 421 U.S. 1014, 95 S.Ct. 2421, 44 L.Ed.2d 682 (1975), the Supreme Court of California stated:

> Notwithstanding the absence of specific authorization to make particular determinations, a juvenile court is nevertheless vested with the authority to make such determinations which are incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law. That law is replete with references to "parents." In some of such instances the court is merely required to respond to allegations of parentage without first having actually to find the existence of a parent-child relationship. However, in other significant respects the law cannot be judicially applied without a determination of parentage when such question is placed in issue. Thus wardship may initially depend, in the circumstances of a particular case, on a finding that a minor has no parent or "persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents." It is manifest that a juvenile court cannot find that a minor has no parent or that he refuses to obey a parent without a contemporaneous determination of parentage.

(Citations omitted.)

On his second claim, Mark argues that he "did not have an opportunity to present any evidence" on the issue of paternity. In addition he argues that the blood test was not accompanied by sworn testimony that the test was a scientifically accepted one or that procedures to make the test valid were followed.

 Mark's first point is without merit, for in opposing the State's motion he did not do so on the ground that he had evidence which challenged the blood test or that he wished time to have an opportunity to develop such evidence. In the absence of a preliminary demonstration of the existence of relevant disputed facts no hearing was required. *Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992). *Cf., State v. Albert*, 899 P.2d 103, 105 n. 2 (Alaska 1995) ("Although the rule is silent as to the circumstances under which a hearing must be held when opposition is filed, our cases generally indicate the necessity for an evidentiary hearing in any case in which there are factual disputes on material issues."); *Estate of Miner v. Commercial Fisheries Entry Comm'n*, 635 P.2d 827, 834 (Alaska 1981) (quoting *NLRB v. Bata Shoe Co.*, 377 F.2d 821, 826 (4th Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967) (holding that "there is no requirement, constitutionally or otherwise, that there be a hearing in the absence of substantial and material issues crucial to [the] determination")); Alaska R. Civ. P. 56(c) (judgment for the summary judgment movant shall be rendered if the pleadings and evidentiary materials show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law).[4]

 Mark's second point lacks merit because he did not object to the admissibility of the test report. *Kvasnikoff v. Weaver Bros., Inc.*, 405 P.2d 781, 784 (Alaska 1965) (inadmissible and unauthenticated documents sub-

---

4. There is a presumption, rebuttable by clear and convincing evidence, that Mark is Johnny's father. *Smith v. Smith*, 845 P.2d 1090, 1092 (Alaska 1993). The effect of this presumption was to shift to the State the burden of going forward with the presentation of evidence. Evidence Rule 301(a). This duplicates the burden that was already imposed on the State as the party moving for relief in the nature of summary judgment. As such, the presumption does not prevent such relief from being entered if, in consideration of all the evidence including the basic fact giving rise to the presumption—Mark's marriage to Melody at the time of Johnny's birth—it could not be reasonably concluded that Mark was

Johnny's father. On this record a conclusion that Mark was Johnny's father would be unreasonable. The fact that the presumption is rebuttable only by clear and convincing evidence does not change this conclusion. If there were any evidence sufficient to raise a genuine issue of material fact on the question whether Mark was Johnny's father, such evidence would suffice to prevent relief in the nature of summary judgment regardless of the standard of proof to be used at trial. *See Moffatt v. Brown*, 751 P.2d 939, 943 (Alaska 1988) ("We decline to incorporate the applicable substantive evidentiary standard into this state's summary judgment practice.").

mitted in support of motion for summary judgment may be considered where "the record does not show that [they were] objected to or that the authenticity of the [documents] was disputed").[5]

For the above reasons the judgment of the superior court is AFFIRMED.

RABINOWITZ, Justice, dissenting.

MOORE, C.J., not participating.

RABINOWITZ, Justice, dissenting.

I think that the State's motion "for a finding that [Mark Bridge] is not the father of [Johnny Bridge]" must be analyzed as a motion for summary judgment. Merely casting the subject motion as one seeking a particular finding should not enable the State to circumvent established procedures applicable to summary judgment motions.

One should not lose sight of the fact that if Mark had not opposed in any fashion the State's disguised summary judgment motion, the State would still have no right to an automatic grant of summary judgment, but rather would have the obligation of establishing its entitlement to a judgment as a matter of law.[1]

The following considerations lead me to the conclusion that the superior court erred in granting summary judgment to the State and in determining that Mark Bridge, the presumptive father of Johnny Bridge, is not the biological father of the child.

In *Smith v. Smith*, 845 P.2d 1090, 1092 (Alaska 1993), we said:

The longstanding common law rule is that a child born to a married woman is presumed to be the offspring of her husband. *See, e.g., Lanford v. Lanford,* 151 Colo. 211, 377 P.2d 115, 116 (1962) (en banc) (presumption dates back to Roman Law); *Alber v. Alber,* 93 Idaho 755, 472 P.2d 321, 324 (1970). This presumption of a husband's paternity can be rebutted only by "clear and convincing evidence." *Lanford,* 377 P.2d at 117; *Alber,* 472 P.2d at 327; Uniform Parentage Act § 4(b), 9B U.L.A. 299 (1987). We adopt both the presumption and the concomitant standard of proof for rebutting it.[2]

Since Johnny was born during Mark Bridge's marriage to Melody Bridge, Mark is presumed to be the father of Johnny Bridge.

Of further significance is our decision in *Mattox v. State,* 875 P.2d 763, 764–65 (Alaska 1994). There the superior court granted summary judgment in favor of the State, establishing that Bruce Mattox is the biological father of three children. In *Mattox* we said:

Although evidence conflicted significantly as to whether Bruce or his brother Richard was the father of the children, the court granted summary judgment based on paternity evaluation reports which tested the DNA of the mother, the children, and Bruce and Richard. The reports of these

---

5. In *Mattox v. State*, 875 P.2d 763, 764 (Alaska 1994), we reversed the grant of summary judgment establishing paternity based on DNA reports which were not accompanied by authenticating affidavits, noting that the party who had moved for summary judgment had not met its burden of showing the absence of genuine issues of material fact. *Id.* at 765. Our decision in this case is consistent with *Mattox* as the DNA reports in *Mattox* were objected to and the test procedures challenged. The requirement that one opposing the use of proffered evidence on lack of authenticity grounds is not an arduous one. The opponent is "required to do no more than raise a timely objection based on the authentication requirement in order to preserve his evidentiary objection and compel compliance by the [movant]." *Murat v. F/V Shelikof Strait,* 793 P.2d 69, 75–76 (Alaska 1990).

1. Civil Rule 56(c) provides in relevant part:

Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

2. In *Smith,* we also noted that our Legislature has created a similar presumption regarding paternity blood tests. Alaska Statute 25.20.050(d) provides in part:

The results of a blood test . . . shall be admitted and weighed in conjunction with other evidence in determining the statistical probability that the putative parent is a legal parent of the child in question. However, a scientifically accepted procedure that establishes a probability of parentage at 95 percent or higher creates a presumption of parentage that may be rebutted only by clear and convincing evidence.

tests concluded that, as to Bruce, the probability of paternity was 99.99% as compared to an untested random male of the North American caucasian population, while Richard was excluded as the biological father of the children.

We reverse. The proffered DNA reports were not accompanied by authenticating affidavits. No sworn testimony was offered that the tests reflected by the reports were scientifically accepted, or that procedures necessary to make the tests valid were followed. Authentication is a requirement generally applicable to documentary evidence, Alaska R. Evid. 901, with exceptions not here relevant. Alaska R. Evid. 902. General scientific acceptance is a statutory requirement for the admissibility of technical tests in paternity cases. AS 25.20.050(d), (e), as well as a common law requirement for scientific evidence where no statute governs. *Contreras v. State*, 718 P.2d 129, 135–36 (Alaska 1986); *Pulakis v. State*, 476 P.2d 474 (Alaska 1970) (adopting test of *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923)). In DNA tests, as in other scientific tests, assuming general scientific acceptance, set procedures must be followed to ensure the validity of the tests. Compliance with these procedures must be shown. *See, e.g., United States v. Two Bulls*, 918 F.2d 56 (8th Cir.1990) (reversible error for the trial court to determine the admissibility of DNA evidence without determining whether the testing procedures were properly performed); *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989) (DNA evidence is generally admissible under the *Frye* test, but results here excluded because lab did not comply with established protocol); *People v. Castro*, 144 Misc.2d 956, 545 N.Y.S.2d 985 (1989) (although DNA evidence met *Frye*, evidence excluded because the lab failed to follow accepted scientific tech-

niques); *Barbara A. v. Gerard J.*, 146 Misc.2d 1001, 553 N.Y.S.2d 638 (Fam.Ct. 1990) (DNA test results excluded because the particular test was tainted). *See also Keel v. State*, 609 P.2d 555 (Alaska 1980) (breath test improperly admitted because state did not establish that calibration was performed by an "instructor" as required by protocol adopted by regulation).

(Footnotes omitted.) We concluded in *Mattox* that the State did not meet its burden of establishing that there were no genuine issues of material fact.

In the case at bar, the State's motion for summary judgment (motion for a finding that Mark Bridge is not the father of Johnny Bridge) was supported by an affidavit of Phillip Kaufman, the state social worker in the case, to which was attached the letter from the Director of the Memorial Blood Center of Minneapolis and blood test results excluding Mark as a biological parent of Johnny.[3] This showing by the State falls far short of demonstrating that accepted protocols were followed. This omission standing alone is, in my view, dispositive.

In short, review of the record convinces me that the State has failed to show that there is no genuine issue as to any material fact relating to Mark's parentage of Johnny and that the State is entitled to a judgment as a matter of law that Mark is not the father of Johnny.[4]

---

3. Is the letterhead, in itself, definitely clear and convincing evidence that a doctor is properly qualified and that the test results are accurate?

4. It bears reiteration that the law presumes that Mark is the father of Johnny. It is the State's obligation to overcome this presumption and demonstrate that it is entitled to judgment as a matter of law. Here the State's showing did not meet the explicit standards regarding authentication and proper protocols we articulated in *Mattox*. (*Compare* Civil Rule 56(e): "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.")