Keith Kent ELSBERRY, Appellant,

v.

Erika Marianna ELSBERRY and State of Alaska, Child Support Enforcement Division, Appellees.

Nos. 5047, S–8049.

Supreme Court of Alaska.

Nov. 27, 1998.

Keith Kent Elsberry, pro se, Anchorage.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE, and BRYNER, JJ.

## OPINION

PER CURIAM.

### I. INTRODUCTION

Keith Elsberry, who was recently released from prison and supports himself by soliciting autobody repair work via classified ads, appeals an order imputing to him the average income of an Alaskan man of his age, $39,131, and calculating therefrom his child-support obligation under Alaska Civil Rule 90.3. The superior court granted a request by the Child Support Enforcement Division (CSED) to impute that income to Elsberry after he had failed to comply with an order to submit tax returns to document his affidavit asserting a monthly income of $800. He claimed that he could not do so because he is self-employed on a cash-only basis, and his religious beliefs prevent him from paying federal taxes, so that he has no tax returns. He asserts on appeal that the superior court abused its discretion by disbelieving his affidavit and imputing an income to him without first affording him a hearing on the sincerity of his anti-tax religious beliefs.

Because the court did not find, or in any way base its order on a presumption, that Elsberry's asserted religious beliefs are insincere, and because on appeal he asserts no other reason to find that the court erred, we affirm.

### II. FACTS AND PROCEEDINGS

In November 1991 the superior court divorced Keith Elsberry and Erika Moore, gave her sole custody of their four children,

and ordered him to pay child support pursuant to Alaska Civil Rule 90.3, albeit without setting an amount.

The State has helped support the children since 1990, and so in July 1992 CSED sent Elsberry a child-support-guidelines affidavit and a notice that it was reviewing the support order. He did not reply. This may have been because he was in prison for custodial interference. CSED sent another letter and guidelines affidavit in July 1996; he again did not reply.

In August 1996 CSED turned to the court, moving it to compel Elsberry to provide financial information. It asked the court to enter a support order based on an imputed income of $72,000—the income yielding the highest possible support award under Rule 90.3—as a sanction under Alaska Civil Rule 37(b) if Elsberry failed to submit the returns within thirty days.

Before the court responded to CSED's motion, Elsberry filed a guidelines affidavit stating gross monthly income of $800. CSED promptly noted his failure to document or explain "the nature of his employment or business or the reason for his extremely low reported income," and again asked the court to order him to provide "complete and accurate information."

In October 1996 the court ordered Elsberry to give CSED his 1991–94 tax returns and either a 1995 return or a guidelines affidavit for his 1995 income, all with documentation. The court warned that, if he failed to do so within thirty days, it could "enter a support order based on an imputed adjusted income of $72,000." Elsberry did not respond.

In December 1996 CSED moved the court to order support of $921 per month. CSED noted that Elsberry had provided no tax returns or other documentation. It appended a child-support-guidelines worksheet calculating a support obligation of $921 per month for a parent with four children and the average annual gross income for an Alaskan man of Elsberry's age: $39,131. CSED justified its proposed order "as an appropriate sanction for Mr. Elsberry's failure to comply with the court's order" to document his income, and as an order "based on the best available information [about his] ability to pay." CSED noted that, if Elsberry eventually submits financial information, "the order may be modified prospectively."

Elsberry opposed the motion, affying that he could not provide tax returns because he had spent three years between 1991 and 1995 in prison,[1] and because his "religious convictions compel [him] not to pay taxes to the federal government." He affied that he did autobody repair work and, being "only a student of the trade," made roughly $800 per month. He offered to pay $50 per month in support. In his memorandum he described himself as "an auto body repair student" and asked the court to find "that [he] has a gross income . . . below the poverty level." He did not document his income in any way.

CSED responded by offering evidence of Elsberry's earning capacity and expenses in the form of an affidavit (with attachments) from CSED Investigator David Tredway and an affidavit from Harold Michels, who owns Bud's Autobody.

Michels affied that Elsberry had operated an autobody shop approximately four years earlier (before his imprisonment, we presume), and that Michels had since mid–1996 leased space in his own shop on an occasional basis to Elsberry, d/b/a Shining Light Autobody. Elsberry paid a lease rate based on the value of the autobody work he did on each day that he used the space; it averaged $50 per day. Michels kept no records of their transactions, which were in cash, but did "recall that[,] during December 1996, Mr. Elsberry leased work space five or six days," and that he had not done so in the first two weeks of January 1997. Michels specified that he was neither employing nor training Elsberry. He estimated that, if Elsberry obtained full-time employment, he would earn roughly $20 per hour.

Tredway affied that Elsberry's landlady reported that he had paid his monthly rent of

---

1. Elsberry affied that he was in prison for "at least three years," but the record does not show when; his probation reports, which the State certified as "a complete . . . copy of all records [it] held," begin in October 1995.

$640 in cash and on time since January 1996, when he moved in. *Anchorage Daily News* billing records attached to Tredway's affidavit documented his claim that Elsberry had paid an average of almost $140 per month in 1996 for classified ads to solicit autobody work. Elsberry's monthly probation reports for October 1995–December 1996, which Tredway's affidavit also explained, consistently listed "Bud's Autobody" as his employer and, after a few months of low income, reported monthly net incomes in March–July 1996 of $500–$1,600. In August Elsberry switched to a "minimum supervision" probation, which required him to report gross rather than net monthly income. In August–December 1996 he listed monthly gross incomes of $800–$2,000, averaging $1,080. Tredway affied that supervisors of four Anchorage autobody-repair shops told him that autobody repairpersons earn $16–$18 per hour on average, with "additional income ... on labor commissions." He affied that a 1995 Alaska Labor Department publication, which he did not append, reports a mean hourly income of $16.17 for autobody repair.

CSED argued in its memorandum that Elsberry "has made it extremely difficult to verify ... his income with any certainty." It noted that "Mr. Elsberry claims to have no tax returns because he refuses to file tax returns for religious reasons." That was CSED's *only* reference to his religious beliefs. The memorandum compared Elsberry's claims with Michels's affidavit, summarized the rest of CSED's evidence, and observed that "all of [Elsberry's] business can be handled under the table, leaving no paper trail by which CSED (or the IRS) could trace these funds." Noting that "[h]is monthly rent and advertising expenses alone are almost equal to his alleged monthly income," CSED concluded that, "[u]nder the circumstances, [his] alleged income of $800 per month is simply not believable." It argued in the alternative that, even if he is "only earning $800 per month, there is no doubt that he could earn more if he wanted to," citing his experience and

autobody repairers' average earnings, and noted that courts can base support orders on the potential income of voluntarily underemployed parents.

The superior court entered an order imputing annual income of $39,181 to Elsberry, "based on the Alaska Average Age/Wage data" for a 42- to 44-year-old man. The court ordered him to pay $921 per month in support.[2] The court said in a brief narrative order that, upon reviewing Elsberry's and CSED's submissions, it had "conclude[d] that Mr. Elsberry is not a credible person when he alleges that his income is limited to $800 per month as a 'student.'" The court said nothing about his religious beliefs.

Elsberry moved the court to reconsider, arguing that his monthly probation reports corroborated his claimed income, and that autobody work fluctuates. He claimed that CSED "has i[n]sinuated that [he] has failed to report taxes ... only to 'beat the system' and get out from under his financial obligation to his children. This court has obviously taken these mis[s]tatements of fact [into account] in [its] consideration in this case." He asserted his sincerity and argued that the court must "make factual findings regarding [his] religious convictions before making a judgment which was based primarily upon [his] credibility...." Noting that the court had "stated that [his] credibility was an issue," he argued that it "should have held a hearing to probe these issues deeper before coming to a conclusion regarding [his] credibility as well as his ability to pay child support." He thus asked the court to hold a hearing on his "religious claims, as well as his sincerity, and to further probe [his] claims regarding his financial status." The court declined without comment. Elsberry appeals.

## III. *DISCUSSION*

 Elsberry argued below and made a point on appeal, but has not discussed at all in his brief, the issue of whether the superior court's support award is clearly mistaken. He has thus waived the issue.[3] The sole

---

2. The court did not address CSED's request that it make the order setting support at $921/month

effective *nunc pro tunc* to the December 1991 date of the original support order.

3. *See, e.g., Zok v. State,* 903 P.2d 574, 576 n. 2

issue that Elsberry has briefed is whether the First Amendment required the superior court to hold a hearing on the sincerity of his religious beliefs before choosing to disbelieve his affidavit and impute an income to him. We review that issue *de novo*, as it involves constitutional law.[4]

The superior court never said or suggested that it based its holding on a finding or suspicion that Elsberry does not sincerely hold the religious beliefs that he asserted. It simply observed that Elsberry had failed to submit *any* documentation of his asserted income, and that it found CSED's substantial evidence regarding his income and earning capacity much more credible than his naked affidavit. It relied on those facts to find him incredible on the issue of his income. The court did not impute an income of $72,000 to Elsberry as a sanction for failure to produce tax returns, as CSED had originally suggested before the religion issue arose. It imputed an income level chosen as a measure of Elsberry's earning capacity, given the limited evidence before it. The court likely could have chosen a lower estimate. Its choice, however, raises no reasonable inference that its tacit intent was to punish Elsberry unconstitutionally because it saw him as sincerely exercising unacceptable religious beliefs, or insincerely claiming to be exercising religious beliefs in order to avoid a parental duty.

Contrary to Elsberry's claims, CSED never said or implied that he did not sincerely hold his asserted beliefs. It only stressed the undeniable fact that those beliefs, and his business practices, made it very hard to divine his income. Had Elsberry given the court any reason to accept *his* asserted income level, and to accept that it approximated his earning capacity, one could arguably infer that the superior court had based its ruling in part on disapproving of or disbelieving his asserted religious convictions. But he never offered any support for his claims beyond his brief affidavits, and never in any

way addressed or disputed any of CSED's substantial contradictory evidence.

Part of the reason for Elsberry's suspicion of the superior court's motive is apparently that he misreads part of its order: *"Mr. Elsberry is not a credible person when he alleges that his income is limited to $800.00 per month as a 'student' "* (emphasis added). Elsberry stresses those words in opening his argument. He seems to think that the court determined that he "is not a credible person" *in general,* and he further presumes that it did so because of CSED's alleged insinuations that his asserted religious beliefs are a sham to enable him to avoid his child-support (and tax) obligations. But the superior court said that Elsberry "is not a credible person *when he alleges* that his income is limited to $800.00 per month as a 'student' " (emphasis added). We view that statement to mean that Elsberry's assertion about his income and "student" status was not, in and of itself, credible. That assertion was incredible not in light of his religious beliefs, but in light of his failure to support it, and CSED's significant evidence undermining it.

The sole relief that Elsberry seeks is a hearing on the issue of the sincerity of his religious beliefs. The State is plainly correct that the order did not explicitly rest on a finding that those beliefs were insincere. The record as a whole, moreover, permits no reasonable inference that the order rested, even implicitly, on a tacit finding or suspicion to that effect. The sincerity of Elsberry's beliefs was not legally relevant, and so there was no need to hold a hearing on the issue.[5]

## IV. *CONCLUSION*

We AFFIRM the superior court's refusal to hold a hearing on the sincerity of Elsberry's religious beliefs.

4. *See, e.g., Wright v. Black,* 856 P.2d 477, 479 (Alaska 1993).

5. *See, e.g., In re J.B.,* 922 P.2d 878, 881 (Alaska 1996) ("In the absence of ... relevant disputed facts no hearing was required.").