*In re* PATERNITY OF MARIAH DAWN SMITH (Mariah Dawn Smith, a Minor by Janice Smith, her Mother and Next Friend and Guardian, Petitioner-Appellant and Cross-Appellee, v. Mike Barbre, Respondent-Appellee and Cross-Appellant).

Fifth District No. 5—87—0672

Opinion filed February 9, 1989.

Robert H. Rath, of Rath & Fornes, of Harrisburg, for appellant.

Bruce D. Stewart, of Harrisburg, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The petitioner, Janice Smith, as guardian for her daughter Mariah Smith, appeals and the respondent, Mike Barbre, cross-appeals from a judgment of the circuit court of White County. On May 11, 1987, the circuit court granted the petitioner's motion for summary judgment and found paternity of the respondent in the child, Mariah Smith, born on June 13, 1972. The court heard the remaining issues on May 11 and 12, 1987, and entered a judgment on those issues on September 1, 1987. As we find that the trial court erred in granting the petitioner's motion for summary judgment, we reverse the court's judgment and remand the cause.

The respondent resides in Carmi, Illinois, and is employed as a farmer and as a jailer for the White County sheriff. He has also worked at various times for McKnight Motors, the Bargain Barn, the Vintage Lounge, and for the township road commissioner. The petitioner also resides in Carmi and has worked in the medical records department at Wabash General Hospital in Mt. Carmel, Illinois, since September of 1986. Both parties were 41 years old at the time of the hearing, and both have known each other since a very young age.

At the time of the conception of Mariah, the petitioner was married to Kenneth Smith. The petitioner testified in her deposition that she first had sexual intercourse with the respondent in June of 1971. The petitioner stated that Mariah was conceived when she had intercourse with the respondent on his birthday in September of 1971, and that she gave birth to Mariah nine months later, in June of 1972.

The petitioner stated that the respondent visited her house about eight months after Mariah's birth in June of 1972. At that time, the petitioner discussed Mariah with him, and the respondent told the petitioner that he did not believe that Mariah was his child. The petitioner continued to have an intimate relationship with the respondent

after the birth of Mariah.

The petitioner stated that she often spoke to the respondent about assisting with payments for food and clothing for the child, but failed to receive any support. In 1977, when Mariah was five years old, the petitioner and the respondent argued and did not see again each other for three years. The petitioner testified that she last asked the respondent for aid for Mariah on the morning of December 24, 1985. Her request went unheeded.

On May 11, 1987, the court entered summary judgment on the issue of the respondent's paternity of Mariah. In its order, the court stated that it had reviewed the depositions of the petitioner, the respondent, and Mary Wallhermfechtel, the paternity-testing supervisor at the Missouri-Illinois Red Cross; had reviewed the results of the blood tests of the petitioner, the respondent, and the child; and had determined that no genuine issue of material fact existed as to the respondent's paternity of Mariah. The court heard the remaining issues on May 11 and 12, 1987. In the trial court's judgment of September 1, 1987, the court ordered that: (1) the respondent contribute to the support of Mariah in the amount of $635 per month commencing August 1, 1987; (2) the petitioner establish a guardianship for the estate of Mariah with the power to receive payments from the respondent; and (3) the respondent pay the sum of $20,152 to the petitioner, an amount equivalent to the monthly support that had accrued during the pendency of the action, along with the petitioner's attorney fees and the costs of bringing the action. The court denied the child's claim to support for the period prior to the commencement of the action.

The petitioner contends on this appeal that the trial court abused its discretion under section 14 of the Illinois Parentage Act of 1984 (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 2514) when it denied support for the minor child for the years prior to the commencement of the action. The petitioner also contends that the trial court erred when it ordered that the respondent pay current support obligations to the child through a guardianship and when it required that the petitioner account for expenditures made for the support of the child.

The respondent contends on his cross-appeal that: (1) the circuit court erred in granting the petitioner's motion for summary judgment on the issue of paternity; (2) the finding of the circuit court that the respondent's net income was $38,105 per year, and the court's order requiring respondent to pay the sum of $635 per month in child support, were against the manifest weight of the evidence; (3) the circuit court erred in ordering payment of a lump sum award for child sup-

port during the pendency of the case and in computing the amount of the support at the rate of $635 per month; and (4) the circuit court erred in ordering the respondent to pay the petitioner's costs and attorney fees.

Since our ruling upon the first issue in the respondent's cross-appeal, *i.e.*, that the circuit court erred in granting the petitioner's motion for summary judgment on the issue of paternity, is dispositive of this appeal, we need not rule upon the remaining issues in the respondent's cross-appeal or upon the issues in the petitioner's appeal.

In her reply to the respondent's contention that the circuit court erred in granting summary judgment, the petitioner asserts that the evidence, including her deposition testimony that the respondent was the father of the child, the results of the blood test, and the respondent's allegedly contradictory and confusing testimony, when considered *in toto*, correctly convinced the trial court that no genuine issue of material fact on the question of paternity remained for trial. The argument between the parties thus focuses on whether the petitioner's evidence, including the blood test and the deposition testimony, so overwhelmingly outweighed the respondent's evidence in rebuttal of the proposition that he fathered the child that paternity was not a genuine issue and the trial court was correct, as a matter of law, in granting summary judgment on that issue prior to trial.

The law in the State of Illinois, as in most other States, directs that summary judgment is appropriate only if no genuine issue of material fact exists as to an issue. (See, *e.g.*, 49 C.J.S. *Judgments* §220, at 394 (1947) ("[i]n passing on [a motion for summary judgment], the court is not authorized to try an issue of fact between the parties, but is to determine whether or not there is an issue to be tried, and whether under the facts defendant is entitled to defend. If it is apparent from the opposing affidavits or other pleadings and proof that there is a substantial issue between the parties, a judgment can be entered only after the trial of the issue in regular course").) Section 2−1005(d) of the Code of Civil Procedure prescribes that "[i]f the court determines that there is no genuine issue of material fact as to one or more of the major issues in the case, *** the court shall thereupon draw an order specifying the major issue or issues that appear without substantial controversy, and directing such further proceedings upon the remaining undetermined issues as are just." (Ill. Rev. Stat. 1985, ch. 110, par. 2−1005(d).) Summary judgment is a drastic remedy (*Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 627, 404 N.E.2d 869, 872), and the party's right to summary judgment must be clear and free from doubt (*Cimino v. Dill* (1980), 92 Ill. App.

3d 345, 348, 415 N.E.2d 1272, 1274-75). "Summary judgment is recognized as a salutary procedure in the administration of justice [citation], but must be cautiously granted so that the respondent's right to trial is not usurped in the presence of material evidentiary conflicting facts and inferences. The function of the procedure is to determine the existence or absence of triable issues of fact, not to try them." (*Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271, 1274.) In ruling upon a motion for summary judgment, the trial court has a duty to consider the entire record to determine whether a genuine issue of material fact exists. *Hoel v. Crum & Forster Insurance Co.* (1977), 51 Ill. App. 3d 624, 632, 366 N.E.2d 901, 907.

■ We initially note that the petitioner was married to Kenneth Smith at the time of the conception and birth of Mariah Smith, that the law presumes him to be the father of Mariah, and that the petitioner must rebut this presumption with clear and convincing evidence. Section 5 of the Act prescribes:

"(a) A man is presumed to be the natural father of a child if:

(1) he and the child's natural mother are or have been married to each other, even though the marriage is or could be declared invalid, and the child is born or conceived during such marriage;
 * * *

(b) [a] presumption under this Section may be rebutted only by clear and convincing evidence." (Ill. Rev. Stat. 1985, ch. 40, par. 2505.)

The common law had a similar rule prior to the legislature's enactment of section 5 in July of 1985. In *People ex rel. Davis v. Clark* (1981), 99 Ill. App. 3d 979, 426 N.E.2d 294, the appellate court stated that a presumption exists that a child born to a married woman is legitimate, *i.e.*, that the husband of the wife is the father of the child. This presumption is not conclusive, however, and may be rebutted by clear and convincing evidence. (*Davis*, 99 Ill. App. 3d at 980, 426 N.E.2d at 295.) The petitioner in the instant case must therefore rebut the presumption of Kenneth Smith's paternity of Mariah with clear and convincing evidence. We find from the record that she did so.

■ Mary Wallhermfechtel, the paternity-testing supervisor for the Missouri-Illinois Red Cross, testified in her deposition that the respondent's blood test could not exclude him as the father of Mariah. She stated that the relative chance of the respondent's paternity is 99.99%, and that the test would have excluded 99.94% of falsely accused men. However, she also stated that the test would have failed

to exclude at least 20,000 other men in the United States, all but one of whom would be falsely accused. Wallhermfechtel related that blood testing alone cannot affirmatively establish paternity. Blood testing for paternity is a test of exclusion and can only establish whether a putative father is not the father of a child. It is not conclusive of paternity. The blood testing does not take into account whether the mother has engaged in sexual relationships with other men that may have fathered the child. We find, however, that the result of the blood test, with its high relative probability of the respondent's paternity, was clear and convincing evidence sufficient to rebut the presumption of Kenneth Smith's paternity of the child.

 Once the petitioner has met her burden of producing clear and convincing evidence to rebut the presumption of Mariah's legitimacy, the presumption of Kenneth Smith's paternity ceases to operate; however, we find from the record that the question of whether the respondent, Barbre, fathered the child remained a genuine contention between the parties and that the trial court thus erred in granting summary judgment on this issue. Ray Winter, the respondent's cousin, executed an affidavit stating that he had once received a letter from a person purporting to be Mariah Smith in which she claimed that Winter was her father. Petitioner caused Kenneth Smith's name to be placed on Mariah's birth certificate, and she advised the Department of Public Aid that Kenneth was the father of the child. The petitioner admitted that she had engaged in sexual intercourse with three men, other than the respondent, during the year in which Mariah was conceived. The respondent denied in his response to the petitioner's request for admission of fact that he was the father of Mariah and stated in his deposition that he did not know whether he was the father of Mariah. The respondent testified that the first time the petitioner informed him that he was the father of Mariah was when he was served with summons in the cause. This evidence clearly demonstrates that a genuine issue on the question of paternity remained for trial.

Finally, the petitioner argues that since this cause was heard before the bench, it was reasonable for the court, in the interest of judicial efficiency, to grant summary judgment before trial rather than trying the case to a predestined outcome. We note, however, that the respondent was entitled to have the trial judge assess the credibility of the witnesses. The counsel for the petitioner admitted in oral argument that blood testing alone was not sufficient proof for paternity. The question of paternity, thus, in part, pitted the credibility of the petitioner against the credibility of the respondent. The petitioner tes-

tified in her deposition that she had named someone else as the father of the child on several occasions. The respondent repeatedly stated in discovery that he had not, or did not know whether he had, fathered the child. The trial judge apparently determined the question of paternity in part upon evidence in the petitioner's deposition, without ever having observed her while testifying. We find that the respondent is entitled to have the trial court assess the credibility of the parties in open court to determine the respective validity of their claims.

Since a genuine issue remained for trial as to the paternity of Mariah Smith, we hold that the trial court erred, as a matter of law, in granting summary judgment upon this issue. We thus reverse the court's judgment and remand this cause to the circuit court of White County.

Reversed and remanded.

WELCH, P.J., and HOWERTON, J., concur.