Marie C. SCHUMACHER for herself, and for and on behalf of her son, Charles W. Milton, a minor child, Appellant,

v.

CITY AND BOROUGH OF YAKUTAT, Appellee.

No. S–7288.

Supreme Court of Alaska.

Aug. 15, 1997.

Rehearing Denied Nov. 28, 1997.

Tony Strong, Law Offices of Tony Strong & Associates, Juneau, for Appellant.

F. Lachicotte Zemp, Jr., Faulkner, Banfield, Doogan & Holmes, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

COMPTON, Chief Justice.

## I. INTRODUCTION

Marie Schumacher appeals from a grant of summary judgment rejecting her claim for damages for injuries her son incurred while sledding down a city-owned road in Yakutat. We affirm.

## II. FACTS AND PROCEEDINGS

Children in Yakutat went sledding frequently on a city-owned road, when it was snowbound and had not been sanded. There was evidence that municipal officials had been informed of this activity. In March 1992, Charles Milton (Charles), then a twelve-year-old child residing in Yakutat, was injured in a sledding accident on the road. On many occasions, including on the day of the accident, Charles's father warned him not to sled on the road. Despite the warnings, Charles sledded down the road into its intersection with a major street. As he entered the intersection, he was struck by a car and seriously injured.

Following the accident, Charles's mother, Marie Schumacher (Schumacher), filed suit against the City and Borough of Yakutat (City) on Charles's behalf and in her own right. The superior court granted summary judgment for the City on the ground that the City had no duty to safeguard Charles from the obvious danger inherent in sledding on the road. The court also concluded that the City was immune from liability arising from the performance of discretionary functions, such as adopting anti-sledding measures. Schumacher appeals.

## III. DISCUSSION

### A. Standard of Review

Summary judgment may be granted only if there is no dispute concerning a genuine issue of material fact [1] and the moving party is entitled to judgment as a matter of law. *Estate of Arrowwood v. State,* 894 P.2d 642, 644 n. 2 (Alaska 1995). This court conducts *de novo* review of the question. *Beilgard v. State,* 896 P.2d 230, 233 (Alaska 1995). All factual inferences are drawn in favor of the non-moving party, and the existence of a dispute regarding any material fact precludes summary judgment. *Id.*

---

**1.** "Whether particular conduct is negligent or reasonable is a question of fact for the jury...." *Gordon v. Alaska Pac. Bancorporation,* 753 P.2d 721, 725 (Alaska 1988). However, the existence and extent of a duty to act is a question of law. *Mulvihill v. Union Oil Co.,* 859 P.2d 1310, 1314 n. 4 (Alaska 1993).

**B.** *The City Did Not Breach a Duty of Due Care by Failing to Prevent Charles from Sledding into Traffic.*

In order to be liable for negligence, the City must have owed and breached a duty to protect Charles from the harm he suffered.[2] The question whether an actionable duty of care exists "is essentially a public policy question involving the following considerations: the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved." *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981) (citation omitted).

While several of the factors outlined in *D.S.W.* militate in favor of the existence of a duty in this case,[3] these factors are outweighed by "the extent of the burden to the defendant and consequences to the community of imposing [such] a duty." *Id.* at 555. In essence, Schumacher is arguing that this court should impose liability on anyone who is aware of another's self-destructive behavior, has any ability to prevent that behavior, and fails to save the injured party from his or her own conduct. Such a holding would transform the law of negligence from a means whereby a person may recover for losses caused by a danger which another's unreasonable behavior created, to a mechanism permitting persons injured by their own conduct to compel any who failed to prevent that conduct to share the burdens of their negligence. We decline to permit such a result. Therefore, we hold that a city cannot be liable for failure to take specific steps to prevent sledding in its streets, or to ensure that its streets were safe for sledding.[4] Accordingly, we conclude that the City owed no duty to protect Charles from the dangers inherent in sledding into an intersection.[5]

Since the City did not have a duty to protect Charles from obvious risks created by his own conduct, the City cannot have committed any breach which might give rise to liability.[6] As a result, the superior court's grant of summary judgment in favor of the City did not constitute error.

Schumacher contends that other jurisdictions have held that municipalities owe a specific duty of care to children playing in streets. However, that duty only requires municipalities to protect against dangers caused by harmful road conditions, such as obstacles or damaged pavement. *McQuillin Mun. Corp.* § 54.52 (3d ed.1994) (citations omitted). That duty does not extend to dangers created by a child's own improper conduct. "Municipalities are not insurers of the lives and safety of children, nor are they under a greater duty as regards the safety of streets for children than for adults." *Id.* (citations omitted). Accordingly, "a child, like an adult, cannot recover where ... the cause of the injury was the child's wantonly reckless act." *Id.* (citations omitted); *see*

---

**2.** This case concerns only a possible breach of a duty to prevent sledding. Any breach of a duty to warn against sledding was not a cause of injury, since Charles was warned by his father.

**3.** This harm was foreseeable from Charles's conduct, and it is certain that his conduct resulted in injury. Moreover, the risk of future harm would be reduced by requiring the City to prevent children from taking dangerous actions.

**4.** We also note that the factor concerning the closeness of the connection between the injury and the defendant's conduct militates against the existence of a duty, since the injury was more closely connected to Charles's conduct than to that of the City.

**5.** To the extent that a child might be owed greater protection against his or her own dangerous conduct than an adult, the effect of Charles's status as a child on the City's duty of care is encapsulated in the doctrine of attractive nuisance, discussed *infra* note 8.

**6.** Our holding that the City had no duty to protect Charles from the risks created by his own conduct obviates the need to consider whether the City's failure to act fell within the ambit of a municipality's discretionary immunity under AS 09.65.070(d)(2).

also *Liability of Municipal Corporation for Injury Related to Coasting in Street,* 46 A.L.R. 1435 ("It is well settled that the use of the highway by coasters is not a defect or obstruction therein, such as would render a [municipality] liable for injuries caused thereby."). Schumacher's contention therefore fails.

■ Schumacher also attempts to hold the City liable on a theory that, as a property owner, the City had a duty to protect against obvious risks caused by dangerous conditions existing on its property. Since Charles was injured by risks that his own conduct generated, rather than by an inherently dangerous property condition, this claim also lacks merit.

■ As a general rule, landowners have a duty to use due care to guard against unreasonable risks [7] created by dangerous conditions existing on their property. *State v. Abbott,* 498 P.2d 712, 723 (Alaska 1972) (holding that ice which state failed to remove from highway was dangerous condition). "A landowner ... must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk." *Webb v. City & Borough of Sitka,* 561 P.2d 731, 733 (Alaska 1977) (applying "ordinary principles of negligence" to persons injured by land conditions).

■ The dangers inherent in sledding down a road do not qualify as dangers caused by a "condition" of land. Aside from activities induced by "attractive nuisances," the definition of "conditions" that landowners

may be required to protect against does not include the conduct of third parties.[8] On the contrary, other courts have expressly excluded third party activity from that definition. *Rombalski v. City of Laguna Beach,* 213 Cal.App.3d 842, 261 Cal.Rptr. 820 (1989) (holding that rock was not a "dangerous condition" injuring one who dived from it, since the rock only became dangerous as a result of plaintiff's misuse of it); *see also* 57 Am. Jur.2d, *Municipal, County, School and State Tort Liability* § 284 (1988) ("'Dangerous condition' refers to the physical condition of the property itself, not to activities on the property, and does not generally encompass the wrongful, criminal, or negligent conduct of third persons."). Like the rock in *Rombalski,* the road only became a danger to Charles as a result of his own misuse of it. Whatever duty the City might have owed to Charles regarding dangerous road conditions did not extend to dangers created by Charles's own conduct.

## IV. CONCLUSION

The City owed no duty to protect Charles from the obvious dangers posed by sledding down a road into an intersection. Accordingly, the accident which injured Charles, while tragic, was not the result of the City's negligence. The decision of the superior court is AFFIRMED.

---

**7.** A risk is unreasonable if "the likelihood and gravity of the harm threatened outweighed ... the burden on the [defendant] for removing the danger." *Abbott,* 498 P.2d at 725.

**8.** Schumacher also has raised the issue of attractive nuisance. However, the doctrine of attractive nuisance only permits children to recover for injuries caused by a land condition if "the children because of their youth do not discover the conditions or realize the risk involved." *Taylor v. Alaska Rivers Navigation Co.,* 391 P.2d 15, 17 (Alaska 1964). If the risk that a condition presents is obvious even to children, the doctrine does not apply, and a child injured by that risk

cannot recover. *Ostroski v. Mount Prospect Shop–Rite, Inc.,* 94 N.J.Super. 374, 228 A.2d 545 (1967) (holding that when nine-year old was injured while sledding in a parking lot, lot owner had no duty to protect the child from the risk created by her action). The danger posed by sledding on the road would be clear to any reasonable twelve-year old, especially since Charles had been repeatedly warned by his father of the dangers of sledding on the road. Since Charles's youth did not render him unable to appreciate the risk created by his conduct, the doctrine of attractive nuisance does not apply.