Howard J. MEYER, Jr., Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT EN-FORCEMENT DIVISION, ex rel. N.G.T., Appellee.

No. S–8187.

Supreme Court of Alaska.

Dec. 30, 1999.

Barry J. Kell, Anchorage, for Appellant.

Terisia K. Chleborad, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

In this paternity case, the Child Support Enforcement Division (CSED) seeks to establish Howard Meyer's parentage of N.G.T. The superior court granted summary judgment to CSED, ruling that Meyer is N.G.T.'s biological father. Meyer appeals, arguing that his denial of intercourse with N.G.T.'s mother during the possible period of conception created a genuine issue of material fact. Because we agree that Meyer's denial of intercourse creates a question of fact sufficient to withstand summary judgment, we reverse the superior court's decision and remand Meyer's case for trial.

## II. FACTS AND PROCEEDINGS

M.T. lives in Savoonga. Howard Meyer lives in Anchorage. Meyer met M.T. in Nome in 1987 and subsequently developed a sexual relationship with her.

From April 8 through April 12, 1992, M.T. attended a conference in Anchorage. A receipt from M.T.'s hotel lists four telephone calls placed to Meyer's home and office on April 8 and 9. M.T. alleges that she and Meyer had intercourse on April 9, 1992. She gave birth to N.G.T. on December 26, 1992. M.T. claims that Meyer is N.G.T.'s biological father.

Although Meyer expressed uncertainty regarding the precise dates and locations of his sexual contacts with M.T., he admitted to having a sexual relationship with her. However, Meyer stated under oath that his last sexual encounter with M.T. occurred in 1991, and he denied having intercourse with her

between March 15, 1992, and April 15, 1992, the possible period of N.G.T.'s conception.

Gene Proof Technologies in Nashville, Tennessee, analyzed blood samples from N.G.T., M.T., and Meyer. The test placed the probability of Meyer's parentage at 99.98%, raising a presumption of paternity under AS 25.20.050(d).[1] The genetic odds favoring Meyer's paternity are said to be 6243 to 1.

After discovery, CSED moved for summary judgment on the paternity issue. CSED authenticated the genetic test results with a six-page affidavit from the director of Gene Proof Technologies. The affidavit emphasized the accreditation of Gene Proof Technologies and provided a detailed explanation of the methodology and results of the testing procedures. Meyer opposed CSED's motion, arguing that his denial of sexual intercourse with M.T. during the period of N.G.T.'s conception sufficiently rebutted the presumption of his paternity for purposes of summary judgment.

The superior court granted CSED's motion for summary judgment. The court found that CSED had satisfied its initial burden by establishing a 99.98% probability of Meyer's paternity, and by sufficiently authenticating the genetic test results with the director's six-page affidavit.

Meyer moved for reconsideration. He offered the affidavit of a paternity testing expert, and submitted his sworn interrogatory answers in which he denied having intercourse with M.T. during the period of possible conception. The superior court considered the motion, but ultimately denied Meyer's request to set aside the paternity judgment. The court found that Meyer's interrogatory answers denying intercourse with M.T. during the relevant period did not reasonably rebut CSED's evidence of paternity. Meyer appeals.

## III. DISCUSSION

The trial court granted summary judgment in favor of CSED, establishing Meyer's paternity as a matter of law. Meyer argues

---

1. AS 25.20.050(d) creates a presumption of parentage for certain genetic test results which es- tablish a probability of parentage at 95% or higher.

that his sworn denial of sexual intercourse with M.T. during the period of N.G.T.'s conception was sufficient to raise a material fact issue precluding summary judgment. We agree.

■ We review grants of summary judgment de novo.[2] We must "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[3] All factual inferences are drawn in favor of the non-moving party, and the existence of a dispute regarding any material fact precludes summary judgment.[4]

■ The party opposing summary judgment need not produce all of its evidence but instead must only show the existence of a genuine factual dispute.[5] In rendering its summary judgment determination, the court should examine the pleadings, affidavits, and discovery answers to ascertain whether any genuine issues of material fact exist.[6] We have noted that "*any* evidence sufficient to raise a genuine issue of material fact" precludes a summary finding of paternity.[7]

■ The court does not weigh the evidence or witness credibility on summary

judgment.[8] Therefore, while it is true that the genetic test results establish a rebuttable presumption of paternity in this case and shift the burden to the putative father to prove non-paternity by clear and convincing evidence, the clear and convincing standard is irrelevant on summary judgment. Recently we held:

> The standard of proof for setting aside a release is clear and convincing evidence. But that standard only comes into play when a fact finder is called upon to consider the parties' reasonable expectations.... It has no direct application at the summary judgment stage.[9]

The clear and convincing standard is only significant in the context of weighing the evidence.

Meyer contends that his interrogatory answers establish a material factual dispute regarding his purported intercourse with M.T. during the period of N.G.T.'s conception. Meyer claims that he and M.T. had intercourse on only two occasions, and that the last time was in 1991.[10] This would have been well before the period during which conception of N.G.T. took place.

**2.** See *Beilgard v. State,* 896 P.2d 230, 233 (Alaska 1995).

**3.** *Id.* (quoting *R.E. v. State,* 878 P.2d 1341, 1345 (Alaska 1994)).

**4.** See *Schumacher v. City and Borough of Yakutat,* 946 P.2d 1255, 1256 (Alaska 1997).

**5.** See *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.,* 584 P.2d 15, 25 (Alaska 1978).

**6.** See Alaska R. Civ. P. 56(c); *French v. Jadon, Inc.,* 911 P.2d 20, 24 (Alaska 1996); *Totem Marine Tug & Barge,* 584 P.2d at 19.

**7.** *In the Matter of J.B.,* 922 P.2d 878, 881 n. 4 (Alaska 1996) (emphasis added).

**8.** See *Gudenau & Co. v. Sweeney Ins., Inc.,* 736 P.2d 763, 765 (Alaska 1987) ("The court does not attempt to weigh the evidence nor evaluate the credibility of witnesses on a motion for summary judgment.").

**9.** *Philbin v. Matanuska–Susitna Borough,* 991 P.2d 1263, 1268 (Alaska 1999); *see also Gablick v. Wolfe,* 469 P.2d 391 (Alaska 1970) (rejecting the contention that a court must consider the

clear and convincing standard on summary judgment where the standard would apply at trial because Rule 56(c) only requires a showing that a genuine issue of material fact exists to be litigated and not a showing that a party will ultimately prevail at trial). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court announced the federal standard for summary judgment, finding that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." This court, however, rejected the federal standard for summary judgment and instead reaffirmed the holding in *Gablick. See Moffatt v. Brown,* 751 P.2d 939, 943–44 (Alaska 1988).

**10.** In his sworn answers to interrogatories, after stating that he had sexual intercourse only twice with the mother, Meyer stated: "My recollection is that the first was in the winter of 1988 or 1989, and the other in 1991." Drawing reasonable inferences from this statement in favor of Meyer, as we must at this stage in the proceedings, this is a statement by him that the last time he had sex with the mother was in 1991 and thus that he did not have sex with the mother during the period of possible gestation.

Meyer's sworn denial of sexual intercourse with M.T. during the period of N.G.T.'s conception creates a factual issue sufficient to preclude summary judgment in the present case. Although we have recognized that a "scintilla of contrary evidence" is insufficient to create a genuine issue of fact,[11] a putative father's sworn denial of sexual intercourse during the possible period of conception is more than a scintilla of evidence.[12] Furthermore, this denial is not merely conclusory since Meyer's basis of knowledge for the alleged fact—that he did not have sexual intercourse with the mother during the period of conception—is clear.

We do not hold that a denial of paternity contained in an unsworn answer to a complaint would suffice to oppose summary judgment.[13] Rather, the defendant must be able to point to "specific facts" controverting a showing of paternity, and the evidence relied upon must be sworn to or must be otherwise admissible. Meyer's sworn denial of intercourse during the possible conception period meets this test.

In reaching our conclusion, we remain cognizant of the significant statistical odds suggesting Meyer's paternity. CSED supported its summary judgment motion with scientific test results claiming a 99.98% probability of Meyer's paternity.[14] This statistical showing may prove decisive at trial. For purposes of summary judgment, however, the court must interpret factual disputes in favor of the non-movant.[15] Viewed in this light, Meyer's denial is sufficient to create a genuine factual issue despite the scientific evidence.

## IV.  CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND this case for further proceedings.

11.  *Yurioff v. American Honda Motor Co.*, 803 P.2d 386, 389 (Alaska 1990).

12.  We note that the Minnesota Court of Appeals has reached a similar result in two analogous cases. *See Williams v. Curtis*, 501 N.W.2d 653, 656 (Minn.App.1993) (holding putative father's denial of intercourse with mother during period of conception sufficient to preclude summary judgment despite 99.21% statistical probability of paternity); *Nash v. Allen*, 392 N.W.2d 244, 247 (Minn.App.1986) (holding putative father's denial of intercourse with mother during period of conception sufficient to preclude summary judgment despite 98.864% statistical probability of paternity); *see also People ex rel. M.C.*, 844 P.2d 1313 (Colo.App.1992) (reversing the trial court's grant of judgment notwithstanding the verdict where the jury believed the putative father's denial of sexual intercourse during the period of conception and found that he successfully rebutted, by clear and convincing evidence, the presumption of paternity attached by (a) the child's birth within 300 days after the marriage was terminated and (b) an unchallenged blood test establishing a 99.9% probability of paternity).

In *Smith v. Smith*, 845 P.2d 1090, 1092 (Alaska 1993), the superior court, after a trial, concluded that a husband was not the father of his wife's child based on the husband's testimony that he did not have sexual intercourse with her during the possible period of conception. This finding was made despite scientific evidence purporting to show a 99.59% probability of paternity. *See id.* We vacated the judgment and remanded the case for further proceedings because the trial court failed to indicate whether the husband had overcome the statutory and common law presumptions of paternity by clear and convincing evidence. *See id.* at 1092–93. But we did not reject the possibility that findings of non-paternity by clear and convincing evidence would be sustainable despite the scientific evidence to the contrary. *See id.*

13.  *See* Alaska R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *see also* Rule 56(c) (listing answers to interrogatories among the documents that can demonstrate a triable issue of fact). *Compare People ex rel. J.M.A.*, 803 P.2d 187, 192–93 (Colo.1990) (holding that a general denial of paternity by a putative father, without any sworn statement in support, does not raise a genuine issue of material fact so as to preclude summary judgment) *with People ex rel. M.C., supra* note 12.

14.  Meyer also challenges this scientific evidence. He contends that it was not adequately authenticated, and he filed the affidavit of a genetic scientist who expressed substantial doubt as to the accuracy of the probability of paternity. Because Meyer's denial of sexual intercourse during the period of conception creates a genuine issue of material fact, it is unnecessary to resolve whether these challenges also created genuine issues of material fact.

15.  *See Merdes v. Underwood*, 742 P.2d 245, 248 (Alaska 1987).

EASTAUGH, Justice, concurring.

I join the court's opinion. Under Alaska's prevailing summary judgment standard,[1] Meyer's conclusory denial of paternity was sufficient to create a genuine issue of material fact.[2] CSED has not argued that we should adopt a different summary judgment standard, such as that employed in the federal courts.[3] FABE, Justice, with whom BRYNER, Justice, joins, dissenting.

FABE, Justice, with whom BRYNER, Justice, joins, dissenting.

I. *Introduction*

In the face of CSED's strong body of scientific, testimonial, and documentary evidence supporting a finding of paternity, Howard Meyer contested summary judgment with only his general denial of paternity. Pleading an inability to recall specific dates or details as to when he last had sexual contact with M.T., Meyer offered only his "belief" that it was prior to the probable dates of conception. Because the Alaska legislature has expressed a policy goal of parental responsibility in creating a presumption of parentage when genetic tests establish a 95% probability of paternity, and because Meyer's probability of paternity is 99.98%, his equivocal denial of paternity does not raise a genuine issue of fact. Where the putative father has the burden to rebut the presumption of paternity, a mere denial of paternity should not prevent the granting of summary judgment. Therefore, I respectfully dissent.

II. *The Evidence Offered by Meyer to Oppose Summary Judgment*

Meyer argues that the following responses to plaintiffs' interrogatories and requests for admission raise a genuine issue of fact in this case. First, in response to an interrogatory requesting the specific facts upon which Meyer intended to base his denial of paternity, Meyer replied that M.T. had "assured" him that she was taking birth control pills during the periods that they engaged in sexual relations. Second, Meyer stated that he "believed" that he had last had sexual intercourse with M.T. in 1991, more than nine months before N.G.T.'s December 26, 1992 birth.

Even this broad denial was not unequivocal. Indeed, Meyer prefaced his interrogatory responses by stating that "[d]ue to the passage of time, I am unable to recall each specific occasion when I have had contact with [M.T.]. For the same reasons, I am unable to recall the precise dates, times of day, locations and circumstances surrounding each such contact that I have had with her." It was only under "these limitations" that Meyer stated his inconclusive denial. This is the full extent of Meyer's proffered evidence opposing summary judgment.

Yet Meyer has not challenged CSED's strong evidence supporting a paternity finding. He has not disputed M.T.'s hotel and telephone receipts that indicate that he had contact with M.T. at the time of conception. Nor has he challenged the specific date of conception that M.T. offered. Meyer has offered no evidence that M.T. had other sexual partners to controvert M.T.'s statement that Meyer was her sole sexual partner during the time of conception. The evidence offered by Meyer is thus insufficient to raise a genuine issue of fact.

III. *Alaska Civil Rule 56(e)*

Alaska Civil Rule 56 highlights the concerns raised by such insubstantial responses to a summary judgment motion. Rule 56(e) states in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the ad-

---

1. See *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.,* 584 P.2d 15, 25 (Alaska 1978).

2. See *In re J.B.,* 922 P.2d 878, 881 n. 4 (Alaska 1996).

3. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Moffatt v. Brown,* 751 P.2d 939, 943 (Alaska 1988) ("Instead of adopting the summary judgment standard articulated in *Anderson,* we choose to continue our longstanding interpretation of our summary judgment standard as contained in Civil Rule 56(c).").

verse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

This rule clearly disapproves of Meyer's reliance on equivocal denials of CSED's factual allegations and his failure to offer any evidence affirmatively setting forth specific facts. While Meyer does present evidence outside of his pleadings, these responses amount to little more than a reiteration of his blanket denial of paternity in his answer.[1]

This court has affirmed summary judgment in other contexts where the nonmovant has provided only his own meager statements unsupported by other evidence. In *Yurioff v. American Honda Motor Co.*,[2] the issue on summary judgment was the date of an accident. The victim presented only his own deposition testimony as evidence that the accident occurred on a certain date, but the defendant presented authenticated hospital records indicating a different date. We held that the victim's evidence did not "reasonably tend[ ] to dispute or contradict" the authenticated hospital records, and we therefore affirmed summary judgment.[3] Similarly, in *Martech Construction Co. v. Ogden Environmental Services, Inc.*,[4] we indicated that an affidavit from Martech's president stating that Ogden agreed to purchase certain equipment, where no other evidence supported this "naked assertion," would not suffice to raise a genuine issue of fact.[5]

In a case factually similar to the present one, the Colorado Supreme Court held that a general denial in the putative father's opposition brief was not sufficient under Colorado's analogous Rule 56(e) to defeat summary judgment.[6] In *People ex rel. J.M.A.*, the plaintiff moved for summary judgment where genetic tests indicated a 99.79% probability of paternity.[7] In response, the putative father filed an opposition brief containing a general denial of paternity without affidavits or other supporting evidence.[8] The court determined that this submission was equivalent to resting upon the mere denial in the answer and therefore failed under Rule 56(e) to "demonstrate by relevant and specific facts that a real controversy existed with regard to his paternity."[9]

## IV. *The Public Policy Underpinning the Presumption of Paternity*

Even if indefinite denials made outside of the pleadings may in some contexts suffice to withstand a summary judgment motion, such denials should not be adequate in the present context given the surrounding policy and statutory framework. Through AS 25.20.050(d), the legislature created a presumption of parentage that arises when certain scientific test results establish a probability of parentage of at least 95 percent.[10] This presumption may be rebutted, but only by clear and convincing evidence.[11] The legislature added this provision in 1984 with the explicit goal of "enhanc[ing] the efforts of those persons who seek to enforce the payment of child support obligations by noncustodial parents having the duty to support."[12]

---

1. Cf. *Western Pioneer v. Harbor Enters.*, 818 P.2d 654, 657 (Alaska 1991) (discounting nonmovant's testimony in support of opposition to a summary judgment motion where it "reflect[ed] only a restatement of his position in [the] litigation").

2. 803 P.2d 386 (Alaska 1990).

3. *Id.* (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978)).

4. 852 P.2d 1146 (Alaska 1993).

5. *Id.* at 1149–50 n. 7. The dissent agreed that "sometimes testimony may be so internally inconsistent and in conflict with the apparently reliable evidence offered by the proponent of a summary judgment motion that it may not serve to create a genuine issue of material fact and

thus defeat summary judgment." *Id.* at 1156 n. 1 (Matthews, J., dissenting).

6. See *People ex rel. J.M.A.*, 803 P.2d 187, 193 (Colo.1990).

7. *Id.* at 192 (applying 6A Colo.Rev.Stat. § 13–25–126(1)(e)(IV) (West 1987)).

8. See *id.* at 193.

9. *Id.*

10. AS 25.20.050(d).

11. See *id.*

12. See ch. 144, §§ 1(b), 4, SLA 1984.

The legislature found that the failure to pay child support not only creates severe hardships for the children and families—often "lower-income, single-parent families [ ] headed by women"—but also has deleterious effects upon society at large, contributing to increased levels of public assistance payments, child abuse, and delinquency.[13] By shifting and heightening the burden of proof, the legislature sent a clarion call that parents must be responsible for their obligations to their children.

In line with this policy, other jurisdictions have required the putative father to present more than mere denials of paternity to defeat a summary judgment motion. The Colorado Supreme Court in *People ex rel. J.M.A.* affirmed summary judgment where the putative father submitted an opposition brief which contained a general denial of paternity and failed to demonstrate by "relevant and specific facts" that paternity was genuinely at issue.[14] And Illinois courts have enforced this public policy by consistently holding that a general denial of paternity without evidentiary support is not sufficient to defeat a summary judgment motion where scientific testing has established the presumption of paternity.[15]

In the context of paternity cases, in which a blood test result raises the presumption of paternity, we too should properly effectuate the public policy of parental responsibility for children by requiring the putative father to present more than an equivocal general denial of paternity in order to defeat summary judgment.

## V. *Conclusion*

In light of the disfavored use of general denials in opposing summary judgment as expressed in Rule 56(e) and the paramount importance of establishing paternity, thereby ensuring the financial support of children, I would hold that Meyer's indefinite denial of paternity was inadequate to withstand CSED's summary judgment motion.

Here, Meyer admitted having a sexual relationship with the mother and could not remember the precise details of this relationship. He presented nothing more than an equivocal denial of paternity, basing his belief that he did not have sexual intercourse with M.T. during the presumed period of conception on mere supposition rather than on actual recollection of any specific facts. In light of M.T.'s uncontroverted statement that Meyer was her sole sexual partner during the presumed period of conception, her documentary evidence of contact with Meyer in Anchorage during this period, and blood tests indicating a 99.98% probability of paternity, Meyer has failed to present any evidence that sets forth specific facts or challenges M.T.'s assertions. Meyer's denial of paternity is simply not enough to raise a genuine issue of fact for purposes of Rule 56(e), and I would therefore affirm the trial court's grant of summary judgment.

13. Ch. 144, § 1, SLA 1984.

14. 803 P.2d at 193.

15. In Illinois, 750 Ill. Comp. Stat. § 45/11 (West 1993) permits genetic testing results to create a rebuttable presumption of paternity. *See People ex rel. Hughes v. Walker*, 278 Ill.App.3d 116, 214 Ill.Dec. 823, 662 N.E.2d 177 (1996) (affirming summary judgment where putative father did not deny having sexual intercourse during probable time of conception, but stated, without corroborating evidence, that the mother had sexual relations with unidentified man); *People ex rel. Black v. Neby*, 265 Ill.App.3d 203, 202 Ill.Dec. 630, 638 N.E.2d 276 (1994) (affirming summary judgment where putative father opposed motion by stating that he was not in Illinois during month of conception despite plaintiff's production of traffic ticket issued to him in Illinois city of mother's residence); *Breese v. Dewey*, 223 Ill.App.3d 356, 165 Ill.Dec. 490, 584 N.E.2d 924 (1991) (affirming summary judgment where putative father flatly denied paternity, but pled insufficient memory or knowledge with respect to all other relevant questions); *Cf. In re Paternity of Smith*, 179 Ill.App.3d 473, 128 Ill.Dec. 487, 534 N.E.2d 669 (1989) (reversing summary judgment grant where putative father not only denied paternity but also produced supporting documentary and testimonial evidence).